UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THOMAS WEBBER,

                    Plaintiffs,                  24 Civ.      ( )

  -against-

SUFFOLK COUNTY, New York,                    **VERIFIED COMPLAINT FOR**
ROBERT WARING, in his Official Capacity,       **DECLARATORY AND**
MICHAEL KOMOROWSKI, Individually, and     **INJUNCTIVE RELIEF**
CHRISTOPHER LOVE, Individually,

                                                                        **Jury Trial Demanded**

                    Defendants.
------------------------------------------------------------x

        Plaintiff, THOMAS WEBBER, by and through his attorneys, The Bellantoni Law Firm, PLLC, for his Complaint respectfully states:

## NATURE OF THE ACTION

        1.     This is an action for, *inter alia*, injunctive, declaratory, compensatory, economic, punitive, and presumed money damages proximately resulting from the actions of the individually named defendants' violations of the plaintiff's Constitutional Rights under the Second and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 by the enforcement of an unconstitutional municipal policy.

        2.     This action seeks, *inter alia*, a declaration that Suffolk County's policy of banning the right to possess firearms based on the events, actions, and/or prohibited status of a cohabitant violates the Second Amendment.

## JURISDICTION

        3.     Jurisdiction in this court is proper pursuant to 28 U.S.C. §§ 1331, 1332. Jurisdiction further exists under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of

the State of New York, of rights, privileges or immunities secured by the United States Constitution.

4. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

6. Plaintiff, THOMAS WEBBER (hereinafter "Plaintiff"), is a natural person and a resident of Suffolk County, New York.

7. Defendant, SUFFOLK COUNTY, New York (hereinafter the "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

8. Defendant, ROBERT WARING (hereinafter "Commissioner Waring"), was at all times relevant herein employed by the County as the Police Commissioner of the Suffolk County Police Department (hereinafter "SCPD" or the "Department"). Commissioner Waring is sued herein in his professional capacity only. As Police Commissioner, Commissioner Waring is the statutory pistol licensing officer in Suffolk County [see, Penal Law § 265.00(10)].

9. As the Suffolk County Police Commissioner, Waring has the authority to issue a New York State pistol license to Plaintiff. At all times relevant herein, Waring (like his predecessors) delegated his licensing authority to Defendants Michael Komorowski and Christopher Love.

10. Defendant MICHAEL KOMOROWSKI (hereinafter "Komorowski") was at all times relevant herein, a Lieutenant with the Suffolk County Police Department and the Commanding Officer of the Suffolk County Pistol Licensing Bureau (hereinafter "Pistol Licensing

Bureau") and an employee of Suffolk County. Komorowski is sued herein in his individual and personal capacity only.

11. At all times relevant herein, Komorowski had actual authority to issue and/or deny applications for a New York State Pistol License. Komorowski denied Plaintiff's application for a pistol license.

12. At all times relevant herein, Komorowski had supervisory authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau.

13. At all times relevant to this action, Komorowski enforced the policies and procedures of the SCPD Licensing Bureau.

14. Defendant, CHRISTOPHER LOVE (hereinafter "Love"), was at all times relevant to this action, an employee of County of Suffolk, and an attorney assigned to the Legal Department of SCPD. Defendant Love is sued herein in his individual and personal capacity only.

15. At all times relevant herein, Love had the authority to, and did, render final decisions regarding appeals of Komorowski's denials applications for New York State pistol licenses.

16. At all times relevant herein, Love implemented and enforced the policies and procedures of the Licensing Bureau, including those challenged herein. Love had actual knowledge that the Licensing Bureau was continuing to enforce the challenged policies, he received the August 30, 2024 letter to the SCPD Appeals Unit delivered on September 3, 2024 as discussed below, and he deliberately disregarded Plaintiff's constitutional rights by continuing to enforce the challenged policies.

17. Suffolk County is liable for the acts and omissions of the individual defendant law enforcement officers based on the existence of *Monell* liability, as set forth more fully below.

18. At all times relevant herein, each of the individual defendants was acting pursuant to the established policies and procedures of Suffolk County and SCPD, including those set forth in the SCPD Pistol Licensing Handbook.

## THE MATERIAL FACTS

### I. The Second Amendment

19. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

20. "[C]onsistent with *Heller* and *McDonald*, [] the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022); see *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 411 (2016).

21. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17 (citation omitted).

22. "To justify its regulation, the government may not simply posit that the regulation promotes an important interest." *Ibid*.

23. "Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Ibid*.

24. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Ibid*.

**II. New York State Law**

25. The possession of a handgun in New York State is, generally, a crime.

26. To lawfully possess and/or carry a handgun for self-defense, one must apply for and obtain a New York State pistol license from a statutory licensing officer.

27. Penal Law § 400.00 is New York State's licensing scheme.

28. Penal Law § 400.00(1) outlines the eligibility requirements for the issuance of a pistol license and a semiautomatic rifle license.

29. New York State's statutory firearms licensing officers ("licensing officers") are created by the Legislature, as set forth in Penal Law § 265.00(10).

30. The authority of the licensing officers is limited by the scope of the duties outlined by the Legislature in Penal Law § 400.00. See, *Goldstein v. Schwartz*, 185 A.D.3d 929 (2d Dept. 2020).

*Suffolk County Pistol License Policy Regarding 'Cohabitants'*

31. For over a decade, it has been the policy and procedure of the SCPD Pistol Licensing Bureau to suspend and/or revoke the New York State pistol license of any licensee who resides with a third party who is, or who the Department believes may be, a person prohibited from possessing firearms.

32. For over a decade, it has been the policy and procedure of the Licensing Bureau to deny a pistol license license to any applicant who resides with an individual who is (or who the Licensing Bureau believes to be) a person prohibited from possessing firearms.

33. SCPD's category of deplorables includes cohabitants who have been 'transported' to a hospital for a mental health evaluation, or has been the subject of a SCPD 'aided' call.

34. SCPD's policies and procedures challenged herein are odious to the plain text of the Second Amendment and wildly inconsistent with America's historical traditions.

35. America has no history or tradition of prohibiting an individual from possessing and/or carrying firearms because of the actions, status, and/or cohabitation with a third person.

36. The Suffolk County policies and procedures challenged herein violate the Second Amendment and the individual Defendants' conduct has violated, and continues to violate, Plaintiff's Second Amendment rights.

*Facts Particular to Plaintiff*

37. Plaintiff has no prohibitors to the possession, receipt, transfer, or carriage of firearms under state or federal law and is one of 'the People' for whom the Constitution was codified.

38. Plaintiff applied to the SCPD Pistol Licensing Bureau for a New York State pistol license.

39. Komorowski denied Plaintiff a pistol license because Plaintiff "failed to disclose that a member of [Plaintiff's] household had been evaluated or treated for mental health issues" [Ex. 1].

*SCPD Questionnaire and Question #45*

40. The disclosure Komorowski referred to is the SCPD Licensing Bureau's "Questionnaire" Question #45, which asks, "Have you or any member of your household *ever* been evaluated or treated as a result of any mental health issues including, but not limited to

depression? " and "Have you or any member of your household *ever* been admitted to any mental institution or hospital, public or private?" (emphasis supplied) [Ex. 2].

41. The entire SCPD "Questionnaire" is precluded by Penal Law § 400.00(3), which provides, "Blank applications shall, except in the city of New York, be approved as to form by the superintendent of state police."

42. Applications for a license issued § 400.00 "shall, except in the city of New York, be approved as to form by the superintendent of state police."

43. The Licensing Bureau has no authority under Penal Law §400.00 to require license applicants to complete any application form other than the New York State Police published PPB-3 or disclose information other than that required under § 400.00. See, § 400.00(3); *Goldstein v. Schwartz*, 185 A.D.3d 929 (2d Dept. 2020).

44. The 'duly constituted police authority' investigating the "statements required in the application" only has authority to take fingerprints and investigate the information provided in the PPB-3 application. See, § 400.00(4).

45. The only application form an applicant is required to complete to obtain a New York State pistol license is the New York State PPB-3 (8/22) [Ex. 3].

46. New York State does not require applicants to disclose the personal medical and/or health information of an applicant's cohabitants [see, §400.00, *et seq.*; Ex. 3].

47. Defendants have no authority under state law to require an applicant to disclose the personal health and medical information of their cohabitants.

48. The SCPD Questionnaire and Question #45 violate and exceed the scope of Penal Law § 400.00. Licensing officers are bound by the scope of Penal Law § 400.00 and have no authority except by that granted thereunder. *Goldstein,* 185 A.D.3d at 930 (licensing officer acted

"beyond the scope of his powers to either deny or grant the application (see Penal Law § 400.00 [4-a]")."

49. Defendants' enforcement of a policy that requires an applicant to disclose the personal health and medical information of their cohabitants violates the Second Amendment, as there is no American tradition of such a requirement to the exercise of the right to possess and carry weapons.

***SCPD Policy Against 'Disqualified' Cohabitants***

50. Komorowski denied Plaintiff's application because Plaintiff failed to answer 'yes' to Question #45.

51. Plaintiff did not inform the Licensing Bureau that a family member had been transported for a mental health evaluation in 2020.

52. SCPD's policy requiring Plaintiff to disclose such information violates the Second Amendment, as there is no such historical analogue.

53. Plaintiff's nondisclosure was neither knowing nor intentional.

54. At the time that Plaintiff's family member was taken for an evaluation in 2020, both Plaintiff and the cohabitant were minor children.

55. Plaintiff had no knowledge of the event involving his family member and, therefore, could not disclose it to SCPD – assuming such a requirement was constitutional.

56. The Licensing Bureau already knew that one of Plaintiff's family members was transported for a mental health evaluation from a search of SCPD records when investigating Plaintiff's Questionnaire. The transport was conducted by SCPD officers, which is memorialized in the SCPD computer database. Indeed, it was Komorowski's denial letter that informed Plaintiff of an event.

57. Komorowski denied Plaintiff a license because of an unknowing 'failure' to disclose information already known to the Licensing Bureau.

58. The requirement that 'all statements be true' applies to the information required by § 400.00 to be disclosed on the statutory "application" under § 400.00(3), not extraneous requirements imposed by Defendants – particularly where the information sought has nothing to do with the applicant.

59. There is no historical analogue for foreclosing the right to possess arms based on the individuals' cohabitants.

*SCPD's "Good Cause" Policy*

60. Komorowski's denial letter indicates that he also denied Plaintiff's application because there was "good cause" to do so.

61. The "good cause" factor under § 400.00(1)(g) was repealed by the New York State Legislature when it passed the Concealed Carry Improvement Act (CCIA) in 2022.

62. SCPD's "good cause" policy, like New York's former "proper cause" factor, violates the Second Amendment and is otherwise overly broad and vague.

*Suffolk County, Komorowski, and Love Were On Notice - Yet Continued to Enforce an Unconstitutional Policy in Deliberate Disregard for Plaintiff's Constitutional Rights*

63. In *LaMarco v. Suffolk County,* 22 Civ. 4629 (GRB) (JMW), the plaintiffs' motion for summary judgment was fully submitted to the court on July 1, 2024.

64. On July 2, 2024, the Hon. Gary R. Brown Ordered Suffolk County to file supplemental briefing, as follows:

> In its papers, the Suffolk County Attorney fails to argue the proper application of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022) by dodging the issue, asserting that the subject matter of this case is

> somehow outside the ambit of the Second Amendment. See Docket Entry 28-35 at 11-13.
>
> This assertion is spurious, seemingly interjected for dilatory purposes. It is obvious that this case involves the proper application of the Second Amendment, and arguments surrounding Bruen are critical to its proper resolution. Indeed, Ms. Zwilling, the Assistant County Attorney handling this case, is well aware of the applicability of the Second Amendment given her work in *Torcivia v. Suffolk Cnty., New York*. 409 F. Supp. 3d 19, 36 (E.D.N.Y. 2019), affid, 17 F.4th 342 (2d Cir. 2021) ("There can be no question that [Suffolk County's] Revocation and Seizure Policies implicated conduct within the scope of the Second Amendment. At least least one of the Policies resulted in the revocation of Plaintiff's pistol license and the temporary seizure of Plaintiff's firearms, and limited Plaintiff's ability to possess handguns.").
>
> Moreover, the County's assertion that Bruen is not retroactive is equally preposterous. See, e.g., *Passalacqua v. Cnty. of Suffolk*, No. 19-CV-5738 (GRB)(SIL), 2022 WL 21795141, at *3 (E.D.N.Y. Dec. 9, 2022) ("Further, the fact that the events at issue took place prior to the Supreme Court's decision in *Bruen* has no bearing on its applicability to the present motions.") (citation omitted). Notably, Ms. Zwilling also represents the County in *Passalacqua*.
>
> Thus, the County is DIRECTED to file a supplemental brief of no more than 10 pages setting forth its position on the proper application of *Bruen* and *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024) to the pending motion within 10 days. Counsel for plaintiffs shall have two weeks to file a response. Given the absence of a good faith basis for the County's position, the Court will, pursuant to Rule 11, award Plaintiffs' attorneys' fees for the preparation of this supplemental brief.
>
> Ordered by Judge Gary R. Brown on 7/2/2024. (JP) (Entered: 07/02/2024)."

65. Rather than comply with the court's Order, Suffolk County defaulted [22 Civ. 4629 at ECF 30].

66. As noted above, the court in *LaMarco* found there was an "absence of a good faith basis for the County's position" in its opposition to the LaMarco's motion for summary judgment and noted it will award Plaintiffs' attorneys' fees for the preparation of this supplemental brief under Rule 11.

67. On July 31, 2024, Suffolk County informed the court that the defendants would not be complying with the court's Order to file a supplemental brief "setting forth its position on the proper application of *Bruen* and *United States v. Rahimi*" [*Id.* at ECF 30].

68. Put differently, Suffolk County defaulted – failed – to put forth a legal defense to the unconstitutional policies challenged in *LaMarco, Milau v. Suffolk County, Torcivia v. Suffolk County*[1] (and enforced against Plaintiff), as required by *Bruen* and as Ordered by the court in *LaMarco*.

69. Rather than decide the plaintiffs' motion for summary judgment, as the plaintiffs specifically requested [*Id.* at ECF 31], the court in *LaMarco* Ordered on August 13, 2024 that within "45 days" Suffolk County is to "develop and explore specific policy changes to resolve this matter that should be presented to plaintiffs in the form of a consent decree" and "[i]f the parties cannot resolve the matter, they may seek a settlement conference with Judge Wicks."

70. Yet, with actual knowledge that there was no legal defense to the policy challenged in *LaMarco, Milau, Torcivia,* and now here, Suffolk County, Komorowski, and Love *persisted* in enforcing the same cohabitation policy against other licensees and applicants, including Plaintiff.

71. The knowing enforcement of the challenged policy, which Defendants know is legally indefensible yet continue to enforce, constitutes a deliberate indifference to the constitutional rights of Plaintiff, and all other Suffolk County residents against whom Defendants have enforced it.

---

[1] See, *Milau v. Suffolk County, et al.*, 17 Civ. 6061 (EDNY) (JS) (pending) (Suffolk County refuses to issue a pistol license to the plaintiff so long as his son (who is legally prohibited by a disqualifying misdemeanor conviction from possessing firearms) continues to reside with him; *LaMarco v. Suffolk County*, 22 Civ. 04629 (GRB) (suspension of parents' pistol licenses and confiscation of firearms because adult son was transported for a mental health evaluation). *Torcivia v. Suffolk County, et al.*, 15 Civ. 1791 (EDNY) (GRB) (grounds for Suffolk County's 2014 revocation of plaintiff's pistol license included (i) plaintiff's daughter had been 'treated for mental health issues'; (ii) aided calls to the home related to his daughter; and (iii) plaintiff's failure to notify the Licensing Bureau of the foregoing).

72. In this case, through counsel, Plaintiff sent a letter to Komorowski and Love providing an opportunity for Defendants to rethink their enforcement of the challenged policy against Plaintiff, lest litigation ensue [Ex. 4].

73. Komorowski and Love were advised that every day that Plaintiff is denied the right to engage in Second Amendment protected conduct as a result of their enforcement of the challenged policy compounds their individual liability and Plaintiff's compensatory and punitive damages for the violations of his constitutional rights [Ex. 4].

74. Defendants' deadline ended on September 10, 2024.

75. By their inaction, Defendants have reaffirmed their intention to continue to enforce an unconstitutional, legally indefensible policy.

*Monell Liability*

76. Defendants' policies and procedures of suspending, revoking and/or refusing to issue a pistol license based on a licensee's (or applicant's) cohabitation with a third party who is or may be prohibited from legally possessing firearms subjects Suffolk County to *Monell* liability.

77. Under *Monell*, an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). Conversely, constitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights, and therefore the employer-employee relationship is insufficient to establish the necessary causation. *Id.*

78. Subsequent cases have considerably broadened the concept of official municipal action. In *Pembaur*, the Court recognized that "when a municipality decides to adopt a particular

course of action, ... it surely represents an act of official government 'policy' as that term is commonly understood." *Amnesty*, 361 F.3d at 125 quoting *Pembaur*, 475 U.S. at 481. "It is not necessary, therefore, for plaintiffs to prove that a municipality has followed a particular course of action repeatedly in order to establish the existence of a municipal policy; rather, a single action taken by a municipality is sufficient to expose it to liability." *Ibid.*

79. The sworn testimony of SCPD Sgt. Walsh and Officer Plihcek in *LaMarco* [22 Civ. 04629, ECF 28], the SCPD Pistol License Handbook [Ex. 5], the LaMarco's Suspension Notices [*Id.* at ECF 28] and Plaintiff's Notice of Disapproval [Ex. 1] are codifications of the enforcement of the challenged municipal policies. See, *Torcivia v. Suffolk Cnty., New York*, 409 F. Supp. 3d 19, 29 (E.D.N.Y. 2019), aff'd, 17 F.4th 342 (2d Cir. 2021) (*Monell* liability established where officer testified to the policy and the undisputed facts demonstrated the policy's enforcement against the plaintiff. "A reasonable juror could conclude from these facts that Plaintiff's weapons were seized pursuant to a formal County policy, particularly where Officer Adler explicitly stated that he acted pursuant to 'standard procedure'…At the very least, a reasonable juror could find that this 'standard procedure' constituted a County custom"); see also, *Milau v. Suffolk County*, 17 Civ. 6061 (JS)(SIL) (pending), which challenges Suffolk County's refusal to issue the plaintiff a pistol license because his cohabitant son is disqualified from possessing firearms – just as Plaintiff's license was denied [*Id.* ECF 49 at 1-2].

80. "Treating 'everyone in the household the same'[2] contradicts one of the central holdings in *Heller*: that the Second Amendment protects an individual right, not a collective right"]; see also, *Torcivia v. Suffolk County* (2014) suspending the plaintiff's pistol license because

---

[2] In *LaMarco,* when asked how Tom LaMarco was "ineligible to possess handguns" based on the fact that his son is ineligible to possess firearms, Officer Plihcek responded, "Because it's a common practice at the Pistol License Bureau that the entire household is held to the same standard as the licensee, the same eligibility" [see, *Id.* at ECF 28, SOF ¶ 85, Ex. 10 at 21], which was "Admitted" by Suffolk County.

13

his daughter had been previously transported for mental health evaluations. In *Milau*, 17 Civ. 6061, the Licensing Bureau would not even process the plaintiff's 2017 application because he continues to reside with his son, a prohibited person.

81. The County's policies are a blanket prohibition on Plaintiff's right to possess handguns for self-defense.

82. Defendants' actions have caused Plaintiff to suffer, *inter alia,* the absolute preclusion of his ability to engage in conduct presumptively protected by the Second Amendment – possessing and carrying a handgun for self-defense, presumed harm arising from the violation of his constitutional rights, garden variety pain and suffering, nominal damages, punitive damages, and economic damages for having to retain an attorney.

## COUNT I
## U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983

83. Repeat and reallege paragraphs "1" through and including "82."

84. Under the theory that Defendants are liable to Plaintiff for violations of his Second Amendment rights. 42 U.S.C. § 1983.

## COUNT II
## *MONELL* LIABILITY

85. Repeats and realleges paragraphs "1" through and including "84."

86. Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policy described herein, the County of Suffolk is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of his Constitutional Rights as plead herein, 42 U.S.C. §1983.

## COUNT III
## NEW YORK STATE CPLR 7803

87. Repeats and realleges paragraphs "1" through and including "86."

88. Under CPLR § 7803(2), the court is to determine whether, by its conduct, the state official "proceeded, is proceeding or is about to proceed without or in excess of jurisdiction."

89. Defendants proceeded and are continuing to proceed without and in excess of their jurisdiction by (a) imposing upon license applicants the requirement that they complete and application, including the Licensing Bureau's 'Questionnaire,' other than the only statewide approved and statutorily required application form for a license issued under Penal Law § 400.00, *et seq.* – the PPB-3 application issued by the Superintendent of the New York State Police; (b) requiring applicants to provide their cohabitants' medical and/or mental health information, including whether they have been treated and/or transported for mental health reasons.

WHEREFORE, a Judgment is respectfully requested:

- Declaring that the Suffolk County policies and procedures described herein violate the Second Amendment;

- Preliminarily and permanently enjoining Defendants, their employees, agents, attorneys, and all others working in concert with them from enforcing the Suffolk County policies and procedures detailed herein, to wit, (i) interfering with an individual's possession and/or carriage of firearms for self-defense because of the actions, condition, and/or eligibility status of third parties; (ii) interfering with an individual's possession and/or carriage of firearms based on who the individual resides with; (iii) interfering with an individual's possession and/or carriage of firearms because such individual did not provide notification to the Licensing Bureau of events that have no bearing on that individual's eligibility to

possess firearms; (iv) enforcing the "good cause" policy; and from publishing such policies in the Suffolk County Pistol Licensing Bureau Handbook;

- Preliminarily and permanently enjoining Defendants, their employees, agents, attorneys, and all others working in concert with them from requiring licensing applicants to complete any application, form, and/or questionnaire other than the New York State PPB-3 application;

- Awarding against each and every defendant garden variety compensatory damages;

- Awarding against each and every defendant nominal damages;

- Awarding against each and every defendant economic damages;

- Awarding against each and every individually named defendant punitive damages;

- Awarding costs, disbursements and reasonable statutory attorney's fees;

- Granting such other, further, and different relief as to this Court seems just, equitable, and proper.

Dated: September 11, 2024
Scarsdale, New York

        THE BELLANTONI LAW FIRM, PLLC
        *Attorneys for Plaintiff*

By:   *Amy L. Bellantoni*
      Amy L. Bellantoni
      2 Overhill Road, Suite 400
      Scarsdale, New York 10583

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THOMAS WEBBER,

                        Plaintiffs,           24 Civ.    ( )

  -against-

                                                      **DECLARATION OF**
SUFFOLK COUNTY, New York,                              **THOMAS WEBBER**
ROBERT WARING, in his Official Capacity,
MICHAEL KOMOROWSKI, Individually, and
CHRISTOPHER LOVE, Individually,

                        Defendants.
-------------------------------------------------------------x

       THOMAS WEBBER, declares pursuant to 28 U.S.C. § 1746:

       1.     I am the plaintiff in the above-captioned matter. I have personal knowledge of the facts set forth herein and where indicated as stated upon information and belief, I believe the same to be true. If called as a witness, I could and would testify competently to the truth of the matters set forth herein.

       2.     I have reviewed the accompanying Verified Complaint. The factual allegations pertaining to my application for a New York State pistol license through the Suffolk County Police Licensing Bureau are true and accurate.

       3.     I have no prohibitors to the possession, purchase, transfer, and/or receipt of firearms under federal and/or state law.

       4.     Because I have met and continue to meet all of the eligibility factors outlined in Penal Law § 400.00 for the issuance of a New York State pistol license, there is no legal basis for the defendants to have denied my application. I had no knowledge of the information related to my family member and cohabitant at the time that I completed the Suffolk County Questionnaire.

1

I was honest and truthful on my application and did not make any knowing or intentional omissions or statements.

5.  I am suffering irreparable harm caused by the complete bar to my constitutional right to possess and carry a handgun for self-defense. I will continue to suffer irreparable and presumed constitutional harm unless the injunctive relief sought herein is granted. A monetary award cannot provide redress for the violations of my right to engage in conduct clearly protected under the plain text of the Second Amendment – possessing and carrying bearable arms for self-defense.

Dated: September 11, 2024

_____
Thomas Webber